TRESA MORAN, APPELLEE, V. MARTIN SLATTERY ET AL.,
APPELLANTS.

FILED FEBRUARY 19, 1916. No. 18614.

1. **Intoxicating Liquors: ACTION FOR DAMAGES: EVIDENCE.** Evidence examined and *held* sufficient to support the verdict.

2. ———: ———: INSTRUCTIONS. Instructions, when taken as a whole and construed together, *held* to have submitted the cause to the jury without prejudice to defendants.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*T. J. Doyle, H. M. Sinclair* and *T. F. Hamer*, for appellants.

*W. D. Oldham* and *E. B. McDermott*, contra.

MORRISSEY, C. J.

Action by plaintiff, for herself and as next friend for her minor child, against defendant Slattery, a liquor dealer,

and Massachusetts Bonding & Insurance Company, his surety, to recover damages caused by the death of Ralph Moran, the husband of plaintiff and father of her minor child. The trial resulted in a verdict and judgment for $5,000 for plaintiff, and defendants have appealed.

On and prior to April 17, 1913, defendant Slattery was engaged in the liquor business in Shelton, Nebraska, and the Massachusetts Bonding & Insurance Company was his surety. On that date Ralph Moran, a young farmer, rode to the town of Shelton with a neighbor, and together they called at Slattery's saloon. It is testified by Slattery that he served Moran two glasses of beer, and no other liquors of any kind that day, while Moran's companion, Lessinger, testifies that on their first visit to the saloon Moran was served with a glass of beer, and later they called again, and Moran was served to four or five glasses of beer and whiskey mixed; that they also called at another saloon, and that Moran was served either beer or ginger ale. This saloon-keeper was also sued in this action, but on the trial he was dismissed out of the case. These two farmers called at a number of business places while in the town of Shelton, and Lessinger testifies that, before they had completed their business and made ready to leave for home, Moran was under the influence of liquor. The team they were driving belonged to Lessinger and was hitched to an ordinary farm wagon. Although Moran was a mere passenger with Lessinger, he took hold of the lines and undertook to drive the team. The wagon was equipped with an ordinary spring seat set by means of "clips" on the top of the box, and Lessinger says that this seat was pulled well up to the front of the box so that their feet projected over, and that they were driving a gentle team. He says he asked Moran to turn the lines over to him, telling him that his driving made him nervous, but Moran insisted on doing the driving. After they had proceeded some distance on their way toward home, Moran fell forward from the wagon, and the team became frightened and ran. Lessinger jumped out of the wagon and escaped injury, but Moran became en-

tangled in the wagon and harness and was dragged under the wagon until the team ran against a telephone pole, bringing it to a stop. Lessinger soon arrived and removed Moran's body from underneath the wagon. Moran expired soon thereafter.

The theory of the plaintiff is that, by reason of intoxication, deceased fell from the wagon, while the defendant denies the intoxication, and attempts to account for his falling by saying that one of the "clips" which attached the seat to the box was found in the road about the place where deceased fell from the seat, and appellant reasons that if this "clip" broke, or became disconnected, it permitted the seat to suddenly turn and precipitate deceased to the ground. Of course, his fall might have been brought about in either way, but Lessinger testifies that after the accident the "clips" on the seat were in place and in good condition. Assuming that a "clip" of this character was found in the road, it does not establish that it came from the wagon in which deceased was riding. It is unnecessary to review at length the testimony showing the intoxication of deceased. There is the admission of the saloon-keeper that he furnished two drinks of beer; there is the testimony of Lessinger that he saw Moran take four or five drinks of beer and whiskey mixed. On the testimony, the jury were warranted in finding that the liquor procured at defendant's saloon contributed to his death.

Complaint is made of an instruction which told the jury that the liquors furnished by the defendant need not be the sole, or even the principal, cause of the injury. This instruction is in harmony with a long line of decisions of this court, and the exception is not well taken. *Smith v. Lorang*, 87 Neb. 537; *Wiese v. Gerndorf*, 75 Neb. 826.

But the main criticism is directed against an instruction which told the jury: "In this case you are limited to the damages, if any, sustained by plaintiffs to their means of support, and you will allow Tresa Moran, the wife, the present value of the sum, if any, that the deceased, Ralph Moran, would probably have contributed to her support

during the period of their joint expectancy of life, and also the present value of the amount, if any, said Ralph Moran, deceased, would have probably contributed to the support of Alice Moran during her dependency, but not beyond her minority, the same being less than the deceased's expectancy. In no event can you allow damages in a sum exceeding $5,000, the amount named in the bond." Appellees point out that this instruction is too restrictive as to the measure of damages, but they have taken no cross-appeal, and it is unnecessary to discuss this phase of the instruction.

The point which appellant seeks to make is that the court did not leave the jury to determine the deceased's expectancy, but assumed it to be greater than the period of the child's minority. The child was six years of age. This instruction would assume that the expectancy is, at least, twelve years. At the time of his death, deceased was 33 years of age, and is shown to have been in excellent health. The Carlisle table of expectancy had been received in evidence. It showed his expectancy to be over 30 years. Defendant offered nothing in contradiction thereof. The court properly instructed the jury as to the weight and sufficiency of this testimony, and when the whole charge is read together, it must be said that the jury were properly instructed on the law of the case. At least, it must be said that there is no error in the instructions of which defendant may complain.

In the assignments of error, complaint is made of the amount of recovery, but this point does not seem to be further urged in the brief. Deceased was an able-bodied, industrious man, making $80 to $100 a month, which he was contributing to the support and maintenance of himself and his family, with a life expectancy of approximately 32 years. It is evident that the verdict is not excessive. We find no error in the record, and the judgment is

AFFIRMED.

SEDGWICK and HAMER, JJ., not sitting.