570 NEBRASKA REPORTS. [Vol. 105

State, ex rel. Nebraska B. & I. Co., v. Board of Commissioners.

STATE, EX REL. NEBRASKA BUILDING & INVESTMENT COM-
PANY, APPELLEE, v. BOARD OF COMMISSIONERS OF STATE
INSTITUTIONS ET AL., APPELLANTS.

FILED JANUARY 19, 1921.   No. 21759.

1. **States: BOARD OF COMMISSIONERS OF STATE INSTITUTIONS: CONTRACTS: DISCRETION.** Under our statute (Laws 1915, ch. 129) requiring the board of commissioners of state institutions to award a contract to the "lowest responsible bidder," the board, in passing upon the question of the responsibility of the bidders, exercises a discretionary power, and its action on that question is judicial in its nature.

2. ——: ——: ——: ——. The board cannot, however, act arbitrarily or capriciously in the matter, and before it can reject a bid on the ground that the bidder is not "responsible," as that term of the statute is understood, the board must have before it information, or evidence, sufficient to show a rational and reasonable basis for its decision.

3. ——: ——: ——: ——. The term "responsible" as used in the statute is not limited in its meaning to mere financial responsibility, but includes within its purview the general ability and capacity of the bidder to perform the work, his facilities and suitability for the task, and those qualities which he must necessarily have in order that he be able to perform the contract strictly in accordance with its terms.

4. ——: ——: ——: ——. When the state board has made a decision, in the exercise of a *bona fide* judgment, that a certain bidder is not responsible, and when its decision is rational and based on facts and not actuated by favoritism, ill will, or fraud, the court cannot set aside the decision.

5. **Mandamus: INFERIOR TRIBUNALS: CONTROL OF DISCRETION.** The court has no power by mandamus to control the decision of those matters which are left by statute to the discretion of inferior tribunals.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed and dismissed.*

Clarence A. Davis, Attorney General, and C L. Dort, for appellants.

*Doyle & Halligan, contra.*

FLANSBURG, J.

Mandamus action against the members of the board of commissioners of state institutions to compel cancelation of an award of a contract made by the board, and to order that the contract be awarded to the relator, the Nebraska Building & Investment Company, which company claims to have been the lowest responsible bidder. Judgment was entered in favor of relator, canceling the prior award, as prayed, and ordering an award of the contract to relator. From this judgment respondents appealed.

The board of commissioners of state institutions has charge of the erection of state buildings. Contracts for the construction of buildings costing more than $1,000 can be made only through public competition, after giving advertised notice, and must be awarded to the "lowest responsible bidder." Laws 1915, ch. 129.

Plans and specifications were prepared and notice to bidders given for the construction of a hospital building at the Soldiers Home at Milford, Nebraska. In the proposal to bidders certain items of the work to be let were submitted in the alternative. At the time of the opening of the bids, the board decided upon those items which were to be considered as the basis for the letting of the contract, and announced such conclusion. Upon the work, based upon the items so decided upon, the bid of the relator was $77,353.30, while that of E. Rokahr was $77,969, and other bids ranged higher. Relator's status thus became fixed as the lowest bidder in point of money amount. The board, however, awarded the contract to Rokahr. This award the district court ordered canceled, upon the ground, evidently, that relator, and not Rokahr, was found by the court to be the lowest responsible bidder.

The sole question is, how far can the court by a mandamus proceeding control the board of state institutions in a determination as to who are lowest responsible bidders in such a case.

The testimony of Mr. Oberlies, chairman of the board, was that relator at the time of the awárding of the contract had under construction for the state two buildings of which the state was in immediate need, and that the work on these buildings had been delayed; that the board had no criticism as to the financial responsibility of the relator company, but was governed in rejecting the bid of the company by the opinion that relator, being a relatively new contractor, and having all the work that it could handle with its equipment and facilities, lacked the capacity, at that particular time, to carry out a strict performance of the contract then to be awarded.

Relator takes the position, since the board did not question its financial responsibility, and since the relator was ready and able to give a bond required by the statute to insure the faithful performance of the work, that the question of responsibility is out of the case, and that there remains only the ministerial duty on the part of the board to award the contract to relator upon its bid.

The term "responsible," as used in the statute, has a broader meaning than a mere reference to pecuniary ability. It was the intention of the statute that a bidder should be a responsible party aside from the giving of the bond. "Though a person may be able to give security to his employer, yet his ability to do and perform with promptness a heavy contract, involving large expenditures, must depend greatly upon his own resources. For this reason, it is assumed that the statute required the successful bidder to be a 'responsible' one, that is to say, 'able to respond or to answer in accordance with what is expected or demanded' (see Webster's Dictionary), in addition to the giving of the bond for the specific performance of the contract." *People v. Dorsheimer*, 55 How. Pr. (N. Y.) 118.

The term "responsible" is not, however, limited to pecuniary ability, as may have been intimated in the New York case just cited, but pertains to many other characteristics of the bidder, such as his general ability and capacity to

carry on the work, his equipment and facilities, his prompt-ness, and the quality of work previously done by him, his suitability to the particular task, and such other qualities as are found necessary to consider in order to determine whether or not, if awarded the contract, he could perform it strictly in accordance with its terms. *Kelling v. Edwards,* 116 Minn. 484; *Inge v. Board of Public Works,* 135 Ala. 187; 36 Cyc. 876. See note, 38 L. R. A. n. s. 672, and note, 26 L. R. A. 710.

As said by Mr. Freeman in his note in 50 Am. St. Rep. 489: "It is clear that if officers and administrative boards, having the power of awarding contracts for public work, were required to act ministerially, or in a particular way, the public interests would suffer at the hands of designing and unscrupulous men. On the other hand, it sometimes happens that public officers and administrative boards are oblivious to the interests of the public, and that, if there were no checks upon them, the door of fraud, corruption, and official extravagance would be thrown wide open. The law, therefore, has wisely provided that contracts for public work shall be let to the lowest responsible bidder giving adequate security."

The tribunals having charge of the letting of these contracts for public work in passing upon the question of the responsibility of bidders, as determined from all those elements entering into that question, do not act ministerially only, but exercise an official discretion. The action of the board in that respect is judicial in its nature, and the exercise of that discretion is vested in the board, and not in the courts.

When the board has made a decision that a certain bidder is not "responsible," and this decision has such support from evidence, or information, then at hand, as to show that the board did not act arbitrarily, or from favoritism, ill will, or fraud, but from an honest conviction, based upon facts, that its action was, in its judgment, for the best interests of the state, it is not the province of the courts to interfere by mandamus, and direct the action

of the board, even though the court should believe that the conclusion of the board was erroneous. For the court to take evidence and upon that evidence to determine that the bidder was in fact "responsible" in such a case would be to substitute the opinion and judgment of the court for that which, by the statute, belongs to the board, and would, under well-recognized rules of law, be unwarranted. *State v. City of Lincoln,* 68 Neb. 597; *State v. Kendall,* 15 Neb. 262; *Johnson v. Sanitary District of Chicago,* 163 Ill. 285; *Kelly v. City of Chicago,* 62 Ill. 279; note, 50 Am. St. Rep. 489; note, 38 L. R. A. n. s. 654.

It is insisted that, under previous decisions of this court, the relator has the right to a review and control of the decision of the board in a mandamus action.

In *State v. York County,* 13 Neb. 57, a writ of mandamus issued to review the action of the county board. The board had awarded a contract under a statute which required that such contract be let to the "lowest bidder competent under the provisions" of the statute. The competency or responsibility of the bidders was, however, not considered in the case. The action of the board was treated by the court, under its construction of the statute, as purely ministerial, and it was assumed without argument in the decision that relator was entitled to a writ if he was shown to be the lowest bidder.

In *People v. Commissioners of Buffalo County,* 4 Neb. 150, 161, the question of responsibility of the bidder was not involved. The court denied a writ on the ground that none of the bids was valid, since certain essential preliminary steps, required by the statute, had not been followed. The statement of the court in that case, that the "lowest responsible bidder" could maintain an action in mandamus to protect his rights, is dictum only, and that statement of the law cannot be approved, at least where the court is asked to pass on some matter upon which the board has acted in the exercise of its discretionary powers.

Relator further relies on the decision in *State v. Cornell,* 52 Neb. 25, 35. In that case the state printing board had

awarded a contract for furnishing to the state, printing, stationery, and supplies. The provisions of the statute involved required the letting of the contract to the "lowest bidder." The court in construing that statute said: "In regard to the character of the work to be performed, its quality, or any details, they were not committed by the law to the discretion or judgment of the board,   *   *   * hence there is in the awarding of the contracts under this law no discretion to be exercised as to any of the particulars to which we have alluded, which would preclude the issuance of a writ of mandamus, which will not, as a rule, be issued to control discretion.   *   *   *   The question of the *responsibility* of the bidder was not left for the general judgment and discretion of the board."

The case of *Marsh v. State,* 2 Neb. (Unof.) 372, is based upon the same statute as that involved in *State v. Cornell, supra,* though the statute had since been amended. No question of the discretionary power of the board was considered, and the case was decided upon the authority and reasoning of *State v. Cornell.*

In those cases, on the other hand, where this court has been called upon to review by mandamus acts of such a tribunal done in the exercise of a discretion, and where the question has been raised, the court has refused to interfere. *State v. City of Lincoln, supra; State v. Kendall, supra.*

The evidence, in our opinion, shows that the board of state institutions in this case exercised its best judgment, and on information sufficient to show that its action was not merely arbitrary or capricious, nor in wilful disregard to the rights of bidders, and the writ of mandamus should, in our opinion, have been denied.

REVERSED AND DISMISSED.

LETTON, DEAN and DAY, JJ., not sitting.